IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BRYAN NORSWORTHY, | No. 2:09-CV-2989-LKK-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| RIVERS, | |
| Defendant. | |
| _____/ | |

       Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (Doc. 84).

**I.  BACKGROUND**

       This action proceeds on the first amended complaint against defendant Rivers. Plaintiff claims that defendant intentionally released documents to the general inmate population identifying plaintiff as a confidential prison informant. Plaintiff alleges that defendant acted in retaliation because he had been investigating her. He also claims that Rivers' conduct demonstrated deliberate indifference to his safety given the danger posed by other inmates who know his status as a confidential informant.

A.  **Defendant's Evidence**

Based on her own declaration, as well as the declaration of Investigative Services Unit Officer Borsh and portions of plaintiff's deposition, defendant asserts that the following facts are not in dispute:

1. Rivers never accessed plaintiff's prison central file.
2. Rivers did not know that plaintiff was an inmate informant.
3. Rivers did not know that plaintiff was investigating her.
4. Rivers never disclosed any information from plaintiff's prison file.
5. Officer Borsh discovered on February 5, 2009, that a document identifying plaintiff as a prison informant had possibly been in the hands of other inmates.
6. Because of this discovery and the resulting risk to his safety, plaintiff was placed in administrative segregation pending an investigation.
7. Plaintiff admitted at his deposition that he had no evidence showing that Rivers made the document identifying plaintiff as a confidential prison informant available to other inmates.
8. Plaintiff admitted at his deposition that somebody other than Rivers – possibly Officer Borsh – could have been responsible.

B.  **Plaintiff's Evidence**

Plaintiff provides with his opposition papers a February 27, 2013, declaration from Leo Self.[1] Mr. Self states that he was an inmate housed at California Medical Facility at the same time as plaintiff from in 2008 and 2009. Mr. Self states that in late 2008 or early 2009 he received "confidential paperwork" from another inmate – Sweeney – and that this paperwork identified plaintiff as a prison informant against him (Sweeney) and two other inmates. According to Mr. Self, "countless inmates" saw and read the paperwork.

///

///

---

[1] This document was apparently never provided to defendant during discovery.

## II. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

///
///
///
///
///
///
///

### III. DISCUSSION

In her motion for summary judgment, defendant Rivers argues that she is entitled to summary judgment because plaintiff cannot prove essential elements of his constitutional claims.

#### A. Safety

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not

liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

In this case, defendant has presented evidence showing that: (1) she had no knowledge of the existence of documentation indicating that plaintiff was a confidential informant; (2) she did not know that plaintiff was a confidential informant; (3) she never accessed plaintiff's prison files; and (4) she never disclosed any information from plaintiff's prison files. Defendant also notes portions of plaintiff's deposition where he admitted that he has no evidence that defendant made the documents showing plaintiff was a confidential informant available to anyone. Plaintiff even testified that he suspected it could have been someone else, possible Officer Borsh.

In his opposition, plaintiff offers little more than his denials of defendant's pleadings, as well as the declaration from Mr. Self. That declaration, however, does nothing to put any of defendant's evidence in dispute. Specifically, while Mr. Self states that documentation indicating plaintiff was a confidential prison informant had been seen by other inmates, Mr. Self's declaration establishes no link to defendant Rivers in that she is not even mentioned.

The court concludes that defendant is entitled to summary judgment as a matter of law on plaintiff's safety claim because he cannot show that defendant knew of any risk to his safety.

/ / /

/ / /

B. **Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

The undisputed evidence in this case establishes that defendant Rivers did not know that plaintiff was investigating her, or that she even knew that plaintiff was a confidential informant. Nothing in the evidence submitted by plaintiff – namely Mr. Self's declaration – refutes this evidence. Because the undisputed evidence shows that Rivers did not know that plaintiff was investigating her, plaintiff cannot prevail on his claim that Rivers retaliated against him for that reason.[2] Defendant is entitled to summary judgment on plaintiff's retaliation claim.

/ / /

---

[2] Nor, as discussed above, can plaintiff establish that the alleged retaliatory act – distribution by Rivers of information identifying plaintiff as a confidential informant – even occurred.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (Doc. 84) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 12, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE