1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JEFFREY BRYAN NORSWORTHY,            No. 2:09-CV-2989-TLN-CMK-P

12                   Plaintiff,

13          vs.                          AMENDED FINDINGS AND
                                         RECOMMENDATIONS
14  RIVERS,

15                   Defendant.

16  _____/

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18  U.S.C. § 1983.   Pending before the court is defendant's motion for summary judgment (Doc.

19  84).

20          This matter is before the undersigned after the then-assigned District Judge's

21  order directing as follows: "The matter will be referred back to the magistrate judge with

22  instructions to conduct an in camera review of all documents associated with the CMF/ISU

23  inquiry and the OIA investigation referred to in the CDC Form 128-B dated February 24, 2009,

24  and attached as Exhibit B to plaintiff's objections (ECF No. 113) and to take such further steps

25  as may be appropriate following completion of said in camera review."   As to the identified

26  / / /

documents, the District Judge stated:

> With his objections, plaintiff has submitted a CDC Form 128-B dated February 24, 2009. Ex. B. To Pls. Objs. (ECF No. 113). The 128-B, signed by Correctional Lieutenant J. Pulsipher, states that on February 5, 2009, plaintiff was placed in administrative segregation based on safety concerns and that an inquiry revealed that plaintiff's "safety is at serious risk due to the discloser [sic] of a confidential memorandum which listed Norsworthy as a confidential source." Id. at 15. The 128-B also states that "a review of the allegations has resulted in the initiation of an investigation by the Office of Internal Affairs. Due to the nature of the incident *as well as the allegations of possible staff misconduct involving California Medical Facility (CMF) Staff* it is necessary to transfer Inmate Norsworthy to a Sensitive Needs Yard (SNY)." Id. (emphasis in District Judge's order). In his objections, plaintiff states that he requested the files of the OIA investigation during discovery but the request was denied.
>
> Evidence of how the confidential paperwork got to inmate Sweeney is apparently absent from this record. Plaintiff's position is that an inference should be drawn, from various facts, that defendant Rivers was the source of the disclosure of the confidential information. Defendant Rivers denies, inter alia, that she was the source of this information or that she had any knowledge that plaintiff was a confidential informant. See Ex. A to Pls. Objs., Declaration of Barbara Rivers (ECF No. 113) at 13.
>
> The information contained in the 128-B suggests that the inquiry by the Internal Services Unit (ISU) at CMF led to an investigation by the California Department of Corrections and Rehabilitation (CDCR's) Office of Internal Affairs (OIA) into the circumstances of the disclosure and to possible staff misconduct in connection therewith. Plaintiff previously sought, inter alia, "the reports and notes generated by ISU/OIA during the investigation of Rivers, about Rivers and the results thereof" as well as defendant Rivers' personnel records. Defendants objected to the request as overbroad, vague, and on the ground that the documents contained official and private information. See Order filed March 29, 2013 (ECF No. 90) at 5-6. Plaintiff's motion to compel production of this information was denied. See id. While plaintiff did not timely seek reconsideration of that order, he now objects vigorously to the denial of the discovery he requested.

The February 24, 2009, 128-B document, reflecting Correctional Lieutenant Pulsipher's recommendation that plaintiff be transferred to a Sensitive Needs Yard at another institution, indicates the following sequence of events:

> First         A confidential memorandum listing plaintiff as a confidential source was disclosed.
>
> Second      Plaintiff was placed in Administrative Segregation on February 5, 2009, "based on [plaintiff's] personal safety concerns."

| | | |
|---|---|---|
| Third | | An inquiry was completed which revealed that plaintiff's safety was at serious risk in the General Population due to the disclosure of the confidential memorandum. |
| Fourth | | An OIA investigation was initiated based on "a review" of the nature of the incident, i.e., the disclosure of the confidential memorandum, as well as "the allegations of possible staff misconduct." |
| Fifth | | It was determined by the CMF Internal Services Unit that plaintiff's presence at CMF was "not required for the [OIA] investigation." |

The order directing an in camera review states that the OIA investigation was prompted by "the inquiry" conducted by ISU and instructs the undersigned to review all documents associated with "the CMF/ISU inquiry" and "the OIA investigation" referred to in the 128-B. As indicated by the sequence of events outlined above, the OIA investigation was initiated following "a review" by an unspecified person or prison administrative body of the nature of the incident and plaintiff's allegations. The 128-B only references the ISU in connection with the determination that plaintiff's continued presence at CMF was not necessary for the OIA investigation. Additionally, the 128-B does not indicate that any factor beyond the mere fact of the disclosure and plaintiff's <u>allegations</u> of misconduct prompted Correctional Lieutenant Pulsipher's transfer recommendation. Therefore, with respect to an ISU inquiry referenced in the 128-B, there are no documents to review.

The order also instructs the undersigned to review all documents associated with the OIA investigation. As the order indicates, plaintiff's motion to compel production of these documents was denied and plaintiff did not seek reconsideration. While the order notes that plaintiff "now objects vigorously," the prior order denying plaintiff's motion to compel was not set aside nor was discovery re-opened. Therefore, the undersigned has reviewed the entire record for any and all documents relating to the OIA investigation referenced in the 128-B.

///

///

These documents are as follows:

• September 3, 2009, letter from Deavonne Long with the Division of Adult Institutions stating that the incident was referred to OIA in April 2009 "and the outcome is still pending." (Ex. to complaint at Doc. 1 and amended complaint at Doc. 18).

• May 28, 2009, Second Level Appeal Response indicating that a request for investigation had been forwarded to OIA. (Ex. to complaint at Doc. 1 and amended complaint at Doc. 18).

• September 29, 2009, Director's Level Appeal Decision indicating that a request for investigation had been forwarded to OIA. (Ex. to complaint at Doc. 18).

Having again reviewed the entire file, the court finds that no further steps are appropriate and continues to recommend that summary judgment be granted in favor of defendant.

## I. BACKGROUND

This action proceeds on the first amended complaint against defendant Rivers. Plaintiff claims that defendant intentionally released documents to the general inmate population identifying plaintiff as a confidential prison informant. Plaintiff alleges that defendant acted in retaliation because he had been investigating her. He also claims that Rivers' conduct demonstrated deliberate indifference to his safety given the danger posed by other inmates who know his status as a confidential informant.

A.    **Defendant's Evidence**

Based on her own declaration, as well as the declaration of Investigative Services Unit Officer Borsh and portions of plaintiff's deposition, defendant asserts that the following facts are not in dispute:

1.    Rivers never accessed plaintiff's prison central file.

2.    Rivers did not know that plaintiff was an inmate informant.

3.    Rivers did not know that plaintiff was investigating her.

4.    Rivers never disclosed any information from plaintiff's prison file.

4

5.      Officer Borsh discovered on February 5, 2009, that a document identifying plaintiff as a prison informant had possibly been in the hands of other inmates.

6.      Because of this discovery and the resulting risk to his safety, plaintiff was placed in administrative segregation pending an investigation.

7.      Plaintiff admitted at his deposition that he had no evidence showing that Rivers made the document identifying plaintiff as a confidential prison informant available to other inmates.

8.      Plaintiff admitted at his deposition that somebody other than Rivers – possibly Officer Borsh – could have been responsible.

**B.      Plaintiff's Evidence**

Plaintiff provides with his opposition papers a February 27, 2013, declaration from Leo Self.[1]  Mr. Self states that he was an inmate housed at California Medical Facility at the same time as plaintiff from in 2008 and 2009.  Mr. Self states that in late 2008 or early 2009 he received "confidential paperwork" from another inmate – Sweeney – and that this paperwork identified plaintiff as a prison informant against him (Sweeney) and two other inmates. According to Mr. Self, "countless inmates" saw and read the paperwork.

**II.  STANDARD FOR SUMMARY JUDGMENT**

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

_____

[1]      This document was apparently never provided to defendant during discovery.

1    moving party

2    . . . always bears the initial responsibility of informing the district court of
     the basis for its motion, and identifying those portions of "the pleadings,
3    depositions, answers to interrogatories, and admissions on file, together
     with the affidavits, if any," which it believes demonstrate the absence of a
4    genuine issue of material fact.

5    Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P.
     56(c)(1).

6

7    If the moving party meets its initial responsibility, the burden then shifts to the

8    opposing party to establish that a genuine issue as to any material fact actually does exist. See

9    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10   establish the existence of this factual dispute, the opposing party may not rely upon the

11   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12   form of affidavits, and/or admissible discovery material, in support of its contention that the

13   dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

14   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

15   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

16   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

17   (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

18   could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

19   1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more

20   than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

21   record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

22   there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is

23   sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the

24   parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

25   / / /

26   / / /

6

1    In resolving the summary judgment motion, the court examines the pleadings,

2 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3 any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see

4 Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

5 before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

6 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for

10 the judge, not whether there is literally no evidence, but whether there is any upon which a jury

11 could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

12 is imposed."  Anderson, 477 U.S. at 251.

13

14    **III.  DISCUSSION**

15    In her motion for summary judgment, defendant Rivers argues that she is entitled

16 to summary judgment because plaintiff cannot prove essential elements of his constitutional

17 claims.  Upon review of the entire file following the order for in camera review, the court

18 continues to agree.

19    **A.    Safety**

20    The treatment a prisoner receives in prison and the conditions under which the

21 prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

22 and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

23 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

24 of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

25 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

26 Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

7

1 "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

2 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

3 when two requirements are met: (1) objectively, the official's act or omission must be so serious

4 such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

5 subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

6 inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

7 official must have a "sufficiently culpable mind."  See id.

8          Under these principles, prison officials have a duty to take reasonable steps to

9 protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir.

10 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met:  (1)

11 objectively, the prisoner was incarcerated under conditions presenting a substantial risk of

12 serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer,

13 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge

14 element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not

15 liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer,

16 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison

17 officials know for a certainty that the inmate's safety is in danger, but it requires proof of more

18 than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

19 Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison

20 officials actually knew of a substantial risk, they are not liable if they took reasonable steps to

21 respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

22          In this case, defendant has presented evidence showing that: (1) she had no

23 knowledge of the existence of documentation indicating that plaintiff was a confidential

24 informant; (2) she did not know that plaintiff was a confidential informant; (3) she never

25 accessed plaintiff's prison files; and (4) she never disclosed any information from plaintiff's

26 prison files.  Defendant also notes portions of plaintiff's deposition where he admitted that he has

1   no evidence that defendant made the documents showing plaintiff was a confidential informant

2   available to anyone.  Plaintiff even testified that he suspected it could have been someone else,

3   possible Officer Borsh.

4          In his opposition, plaintiff offers little more than his denials of defendant's

5   pleadings, as well as the declaration from Mr. Self.  That declaration, however, does nothing to

6   put any of defendant's evidence in dispute.  Specifically, while Mr. Self states that

7   documentation indicating plaintiff was a confidential prison informant had been seen by other

8   inmates, Mr. Self's declaration establishes no link to defendant Rivers in that she is not even

9   mentioned.

10         As indicated in the order directing in camera review, plaintiff asserts that the

11   evidence – specifically the 128-B – allows for a reasonable inference that defendant Rivers was

12   the source of the disclosure of the confidential memorandum identifying plaintiff as an

13   informant.  The court does not agree.  There is nothing in the sequence of events outlined in the

14   128-B which links the disclosure to defendant Rivers.  The 128-B merely shows that plaintiff's

15   safety was at risk due to the disclosure of confidential information, that an investigation was

16   initiated based on the disclosure and plaintiff's allegations of staff misconduct, and that

17   Correctional Lieutenant Pulsifer recommended that plaintiff be transferred to a Sensitive Needs

18   Yard at another prison.  Plaintiff asks the court to draw an inference out of thin air that defendant

19   Rivers disclosed the confidential information  without pointing to facts which could form a

20   reasonable basis for such an inference.[2]  The 128-B is insufficient in this regard.

21         The court concludes that defendant is entitled to summary judgment as a matter of

22   law on plaintiff's safety claim because he cannot show that defendant knew of any risk to his

23   safety.

24

25

26       [2]    Plaintiff's argument is at odds with his admission that somebody other than
defendant Rivers – possibly Officer Borsh – could have been responsible for the disclosure.

1    **B.    Retaliation**

2        In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

3    establish that he was retaliated against for exercising a constitutional right, and that the

4    retaliatory action was not related to a legitimate penological purpose, such as preserving

5    institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

6    In meeting this standard, the prisoner must demonstrate a specific link between the alleged

7    retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

8    Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

9    must also show that the exercise of First Amendment rights was chilled, though not necessarily

10   silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

11   2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

12   plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

13   took adverse action against the inmate; (2) the adverse action was taken because the inmate

14   engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

15   rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

16   408 F.3d at 568.

17       The undisputed evidence in this case establishes that defendant Rivers did not

18   know that plaintiff was investigating her, or that she even knew that plaintiff was a confidential

19   informant.  Nothing in the evidence submitted by plaintiff refutes this evidence or leads to a

20   reasonable inference to the contrary.  Because the undisputed evidence shows that Rivers did not

21   know that plaintiff was investigating her, plaintiff cannot prevail on his claim that Rivers

22   retaliated against him for that reason.[3]  Defendant is entitled to summary judgment on plaintiff's

23   retaliation claim.

24

---

25       [3]    Nor, as discussed above, can plaintiff establish that the alleged retaliatory act –
     distribution by Rivers of information identifying plaintiff as a confidential informant – even

26   occurred.

1

**IV.  CONCLUSION**

2          Based on the foregoing, the undersigned recommends that defendant's motion for

3   summary judgment (Doc. 84) be granted.

4          These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

6   after being served with these findings and recommendations, any party may file written

7   objections with the court.  Responses to objections shall be filed within 14 days after service of

8   objections.  Failure to file objections within the specified time may waive the right to appeal.

9   See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11    DATED:  October 10, 2014

12                                            _____
13                                            **CRAIG M. KELLISON**
                                              UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26